IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MCLAUGHLIN,<br>            Plaintiff,<br><br>       v.<br><br>PHELAN HALLINAN & SCHMIEG, LLP,<br>LAWRENCE T. PHELAN, FRANCIS S.<br>HALLINAN, DANIEL G. SCHMIEG<br>AND ROSEMARIE DIAMOND,<br>            Defendants. | )<br>)<br>)<br>)  Civil Action No. 10-1406<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM

Gary L. Lancaster,                                September 7, 2012
Chief Judge

This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Plaintiff, Timothy McLaughlin ("McLaughlin"), alleges that a letter he received from Phelan Hallinan & Schmieg, LLP on June 7, 2010 was sent in connection with a debt collection and falsely purported to be produced by an attorney in violation of section 1692e(3) of the FDCPA.[1] Phelan Hallinan & Schmieg, LLP, Lawrence T. Phelan, Francis S. Hallinan, Daniel G. Schmieg, and Rosemarie Diamond (collectively, "PHS") have moved for summary judgment on McLaughlin's one remaining claim, arguing that McLaughlin's claim was released in a settlement agreement entered in a prior litigation, that the letter at issue is not actionable under the FDCPA, and that McLaughlin has failed to adduce evidence

---

[1]   The court will refer to the FDCPA provisions by their United States Code section numbers.

sufficient to permit a reasonable jury to find that the letter was not the product of meaningful attorney involvement. McLaughlin contends that there are sufficient facts to advance his section 1692e(3) claim to a jury, and that documents attached to PHS's reply brief in support of their motion for summary judgment present a factual dispute suitable for resolution by a jury.

The court concludes that McLaughlin has not adduced sufficient evidence to support his section 1692e(3) claim. The documentary evidence in the form of invoices submitted by PHS during summary judgment briefing, however, may support a reasonable jury finding that PHS misstated the amount of the debt in violation of section 1692e(2)(A). Because the court previously dismissed that claim [Doc. Nos. 53 and 72], we will provide McLaughlin 30 days to file a motion for relief from those orders. If McLaughlin chooses to file such a motion, PHS will, of course, have the opportunity to oppose it.

I.   PROCEDURAL HISTORY

Mr. McLaughlin filed his initial complaint on October 22, 2010.[2] [Doc. No. 1.] That complaint was dismissed without

---

[2]   McLaughlin styled his amended complaint as a class action, but no steps were taken under Local Civil Rule 23 to certify a class. See LCvR 23. Accordingly, this opinion

prejudice on April 15, 2011. [Doc. No. 36.] McLaughlin filed an amended complaint on April 29, 2011. [Doc. No. 38.] The court denied PHS's motion to dismiss the amended complaint on September 9, 2011. [Doc. No. 53.]

In a memorandum order dated December 20, 2011, the court, per McLaughlin's request during the post-discovery status conference, provided clarification as to the effect of its order denying PHS's motion to dismiss the amended complaint. [Doc. No. 72.] The court explained that, consistent with the prior opinions in the case, McLaughlin did not state a viable claim under section 1692g because he did not allege that he challenged the validity of the debt prior to filing suit. Accordingly, the court stated that "the matter proceeds with respect to plaintiff's section 1692e(3) claim only." [Doc. No. 72, at 3.]

II. FACTUAL BACKGROUND

Unless otherwise stated, the following facts are undisputed.

This lawsuit arises out of a letter, dated June 7, 2010 (the "Letter"), sent by PHS to McLaughlin, and his wife, Luann McLaughlin. The Letter was a validation notice, as defined by section 1692g(a), that provided information about the

---

and the accompanying order address only McLaughlin's individual claim.

McLaughlin's debt and foreclosure proceedings. The debt and foreclosure action arose from McLaughlin's October 2005 execution of an adjustable rate note in the amount of $325,000.00, secured by a mortgage on McLaughlin's home, in favor of CitiMortgage, Inc. ("CitiMortgage"). McLaughlin fell behind on his mortgage payments for reasons that are not material to this action, and CitiMortgage referred the matter to PHS for collection.[3] PHS initiated contact with McLaughlin via the Letter.

The Letter states that PHS "is a debt collector attempting to collect a debt." [Doc. No. 75, Ex. 1, at 13.] It provides an itemized statement of the debt as of May 18, 2010, which totaled $365,488.40. [Id.] Among other amounts included in the itemization of the debt were the following: a principal balance of $313,799.51; attorney's fees of $650.00; and costs of suit and title search of $550.00. [Id.]

The Letter then states:

> Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of this notice, the debt will be assumed to be valid by our firm. If you notify our office in writing within thirty (30) days after receipt of this notice that the debt or any portion thereof is disputed, we will obtain and provide you with verification of the debt by mail.

---

[3] The alleged reasons McLaughlin fell behind on his mortgage were the subject of litigation in this court, at Civil Action No. 10-1124, the settlement of which is discussed, infra.

4

> The law does not require us to wait until the end of the thirty (30) day period following first contact with you before commencing a foreclosure action. Accordingly, a separate complaint in foreclosure is being filed and will be served on you. Even though the law requires a response within twenty days of service of the complaint, a judgment will not be entered against you for a period of thirty days after service of the complaint to assure your opportunity to dispute the validity of the debt.
>
> Very Truly Yours,
>
> Phelan Hallinan and Schmieg, LLP

[Id. at 14.]

PHS describes the process by which the Letter was prepared and sent to the McLaughlins as follows. On May 19, 2010, CitiMortgage sent a foreclosure referral to PHS, which contained the McLaughlin's loan information. PHS ordered a title report, which it received on May 21, 2010. On June 7, 2010, a legal assistant, Ada Rivera, prepared the Letter. After an initial review by a non-lawyer staff member, attorney Joshua Goldman reviewed the loan documents and the figures received from CitiMortgage, the title report, and other documents. Mr. Goldman then reviewed and approved the Letter. Mr. Goldman estimated that he spent ten to twenty minutes reviewing the McLaughlins file before approving the Letter. This conforms to the general review process described in the testimony of Michele Bradford, PHS's Rule 30(b)(6) witness and an administrative partner in the Philadelphia office. These facts are generally

disputed by McLaughlin based on, among other grounds, the witnesses' lack of credibility and the testimony of Maria Asencio. Ms. Asencio is the unnamed "Former Employee" referred to in several key allegations in the amended complaint.

Ms. Asencio worked in the title claims department of Phelan Hallinan & Schmieg, P.C. ("PHSPC"), an entity legally separate from but related to PHS, from March to November 2009. Her employment responsibilities focused on the resolution of title issues surrounding foreclosure complaints. She provided deposition testimony that at PHSPC, which was located in New Jersey, she observed attorneys signing foreclosure complaints without reviewing them. Ms. Asencio worked only in the New Jersey office of PHSPC, and did not observe any conduct at PHS's office in Philadelphia, Pennsylvania. She has no knowledge as to how foreclosure complaints were prepared, reviewed, or executed by the Philadelphia office.

Ms. Asencio acknowledged a general lack of familiarity with the FDCPA, and specifically admitted to not knowing what a validation letter is or how such letters are prepared. Her deposition testimony on this point reads as follows:

> Q. Are you aware of the – what's known as a validation letter that was sent to Mr. McLaughlin?
> A. No.
> Q. Do you even know what that is?
> A. No, I do not.

```
          Q.   So it would be fair to say that not knowing
               what it is you wouldn't know how it's
               prepared?
          A.   Exactly.
```

[Doc. 73, Ex.2, at 148.]

The record now contains three invoices (the "Invoices") sent by PHS to CitiMortgage related to the McLaughlin's mortgage foreclosure debt. As part of his argument that there remain questions of fact related to the level of attorney involvement with the preparation of the Letter, McLaughlin asserted that PHS failed to comply with its discovery obligations by refusing to produce invoices for attorney time spent reviewing McLaughlin's mortgage file. PHS responded that they complied with their discovery obligations, and that the invoices in the underlying foreclosure action did not contain time entries or descriptions of the attorney work because PHS charged a flat fee for each foreclosure case. Nevertheless, PHS attached the Invoices to their reply brief, along with an affidavit stating, among other things, that the purpose of disclosing the Invoices was to show that they were consistent with representations made during depositions McLaughlin's counsel conducted. [Doc. No. 80, Ex. A.]

The Invoices were disclosed after discovery closed. They were revealed for the first time when PHS attached them to its reply brief, and they contain the following material facts.

The first invoice, dated June 8, 2010 (one day after the Letter) listed "Foreclosure Costs" totaling $440.00 and "Foreclosure Fees" of $625.00. The second invoice, dated August 26, 2010, has one entry for "Foreclosure Fees", specifically for an "AMENDED COMPLAINT", for $200.00. The third and final invoice, dated March 7, 2011, contains two entries for "Foreclosure Costs". The first is a $155.50 entry, dated June 7, 2010 (the date of the Letter), for "FILING OF A COMPLAINT (E-FILED)". The second is a $5.00 entry for "SOLDIERS AND SAILORS CIVIL RELIEF ACT SEARCH".

Upon reviewing the Invoices, McLaughlin filed a sur-reply brief arguing that the Invoices could not be reconciled with the statement of the debt in the Letter. The sur-reply brief cited specific examples of discrepancies between the amounts PHS billed CitiMortgage and the amount of the debt PHS stated in the Letter.

III. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant needs only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not

entitled to a trial, and PHS is entitled to summary judgment as a matter of law.

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law.

IV.  DISCUSSION

Congress enacted the FDCPA in 1977 based on "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The FDCPA aims "not only to eliminate abusive practices by debt collectors, but 'to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Brown v. Card Service Center, 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692e). Because it considered existing consumer protections insufficient, Congress gave consumers a private cause of action against debt collectors who violate the FDCPA. Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 996-97 (3d Cir. 2011). The FDCPA is to be construed broadly in order to achieve its remedial purpose. Id. at 997. And to

10

ensure that all consumers are protected, courts are to "analyze communications from lenders to debtors from the perspective of the least sophisticated debtor." Id. (internal quotation omitted).

PHS argues that it is entitled to summary judgment on McLaughlin's claim for three reasons: (1) there is no evidence to support McLaughlin's contention that the Letter was prepared without meaningful attorney involvement; (2) the Letter is a validation notice not subject to the requirements of the FDCPA; and (3) McLaughlin's claim was released when he settled a related lawsuit with CitiMortgage. McLaughlin contends that the Letter, which he argues is subject to the FDCPA, violated the FDCPA because it implied a level of attorney involvement in its preparation. McLaughlin argues that there are issues of fact regarding the level of attorney involvement in preparing the Letter that must be resolved by a jury, including factual disputes raised by the Invoices.

The court will begin with the threshold legal questions of whether the claim asserted here was released and whether the Letter is subject to the FDCPA. The court will then address McLaughlin's arguments that the Letter was not the product of meaningful attorney involvement and that the Invoices show a misrepresentation of the amount of McLaughlin's debt.

11

### A. The CitiMortgage Litigation Settlement Agreement

PHS argues that McLaughlin's claim is barred by the terms of the Compromise, Settlement And Release Agreement (the "Agreement") between Timothy and Luann McLaughlin and CitiMortgage. The Agreement settled litigation between the McLaughlins and CitiMortgage regarding the underlying mortgage loan that is at the root of this action. See generally McLaughlin, et al. v. CitiMortgage, Inc., Civ. No. 10-1124 (W.D. Pa. dismissed Feb. 15, 2012). McLaughlin argues that PHS lacks standing to assert rights under the Agreement and that the plain language of the Agreement preserves their claim.

The court construes "releases according to the principles of state contract law, insofar as state law is consistent with federal objectives." Gunser v. City of Phila., 241 Fed. App'x. 40, 42 (3d Cir. 2007). "Under Pennsylvania law, [the] guiding concern when construing the scope of a release is to honor the parties' intent. We do this by looking at the language of the release and the circumstances surrounding its execution." Id. (internal citation omitted).

Here, the court need look no further than the plain language of the Agreement to dispose of PHS's argument that it bars McLaughlin's FDCPA claim. The CitiMortgage settlement agreement states: "this Agreement shall in no way affect the litigation between Timothy McLaughlin and Phelan Hallinan &

Schmieg, LLP at case number 10-cv-01406 in the Western District of Pennsylvania." [Doc. No. 73, Ex. 3, at 165.] This direct statement is not subject to reasonable alternative interpretations, and therefore it is not ambiguous. See Taylor v. Continental Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991). It is clear from this clause that the Agreement expressly exempts this litigation from the effect of the settlement, and reserves the claim at issue here. PHS argues that the Agreement releases CitiMortgage's agents, a group that includes PHS. But the court reads the explicit and specific language of the Agreement as it relates to this action - "shall in no way affect the litigation" - to provide an exception to the general release of CitiMortgage's agents.

Accordingly, McLaughlin's claim in this case is not barred by the Agreement and we will analyze whether the Letter is actionable under the FDCPA.

### B. Status of the Letter

The FDCPA prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (emphasis added). PHS argues that the Letter is not covered by section 1692e because it does not demand payment and was intended to merely provide McLaughlin with information about his debt. McLaughlin contends that this

13

position relies on an overly narrow reading of the Letter and ignores both the relationship between the parties and the pointed statements contained in the Letter regarding the debt.

The U.S. Court of Appeals for the Third Circuit has not set forth a standard for determining whether a communication from a creditor to a debtor is made "in connection" with debt collection, so as to fall within the terms of the FDCPA. Other federal courts of appeals, however, have provided persuasive and applicable analysis on where to draw this line. See Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011). The U.S. Courts of Appeals for the Sixth and Seventh Circuits have drawn the line as follows: "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Id. (citing Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010)). In Gburek, the court applied a "commonsense inquiry" to determine whether a communication is made in connection with a debt collection, and "the absence of a demand for payment" is just one factor in that inquiry. Gburek, 614 F.3d at 385.

The Letter contains no express demand for payment, but a commonsense review of both its contents and the general context of the relationship between PHS and McLaughlin compels the conclusion that it was sent in connection with a debt

collection. The Letter states, in its second sentence, that "Phelan Hallinan & Schmieg, LLP is a debt collector attempting to collect a debt." The Letter then provides an itemized statement of McLaughlin's debt. It also states that "[u]nless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of this notice, the debt will be assumed to be valid by our firm." In addition, the Letter refers McLaughlin to parallel foreclosure proceedings arising from the debt.

These statements are sufficient to permit a reasonable juror to conclude that the Letter was sent for the purpose of advancing the debt collection process. This purpose is manifest in the Letter because the sender, PHS, is identified as a debt collector, the debt at issue is detailed, McLaughlin is provided an opportunity to dispute the debt, and McLaughlin is notified that foreclosure proceedings are being initiated based on the debt. The lack of an express demand for payment is not enough to overcome the fact that the Letter, by its own terms, is part of an effort to recover McLaughlin's debt.

Because a reasonable juror could conclude that the Letter was sent for the purpose of inducing McLaughlin to pay the debt set forth therein, the court will proceed to the issue of whether PHS is entitled to summary judgment on the merits of McLaughlin's section 1692e(3) claim.

### C. Merits of the Section 1692e(3) Claim

Section 1692e prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). A collection letter violates section 1692e's proscription of "false, deceptive, or misleading" communications if it falsely implies that an attorney, acting as an attorney, is involved in collecting the debt. Lesher, 650 F.3d at 1003. According to the court of appeals, such a letter may lead the least sophisticated debtor to "reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action." Id.

There is no dispute that the Letter implies that an attorney was involved in the debt collection. Therefore, the dispositive issue is whether an attorney was actually involved or the representation of attorney involvement was false. As such, the issue here is whether McLaughlin has adduced sufficient facts to support his claim that preparation of the Letter lacked meaningful attorney involvement. PHS's position is that the Letter was the product of meaningful attorney involvement, and they argue that McLaughlin has not identified sufficient evidence to create a genuine dispute of fact on that issue. McLaughlin relies on Ms. Asencio's testimony to support his section 1692e(3) claim.

In his amended complaint, McLaughlin bases several allegations on the assertions of an unidentified, non-lawyer "Former Employee" of PHS. [See Doc. No. 38 at ¶¶ 29-37.] Discovery has revealed the Former Employee to be Ms. Asencio. It has also revealed that Ms. Asencio was employed at PHSPC, a New Jersey entity separate from but related to PHS, and that she had no information regarding validation notices or the Letter. Indeed, Ms. Asencio testified that she is unfamiliar with validation letters and how they are prepared. She also testified that she was not aware of the Letter sent to the McLaughlins.

McLaughlin has submitted no other evidence in support of his claim. Accordingly, Ms. Asencio's admissions are fatal to McLaughlin's section 1692e(3) claim because they demonstrate a lack of evidentiary support for the claim that the Letter was not reviewed by an attorney, acting as an attorney.

Moreover, attorney Goldman testified that, although he did not specifically remember McLaughlin's file, he was directly and personally involved in the review of validation letters, and estimated that he spent ten to twenty minutes on the Letter. McLaughlin offers no evidence to dispute this testimony. McLaughlin instead argues it would be reasonable to infer from Ms. Asencio's testimony that because attorneys signed complaints at PHSPC without reviewing them that attorneys at PHS signed

17

validation notices, like the Letter, without reviewing them. The court concludes that a reasonable jury could not make such an inference.

Because McLaughlin has failed to adduce evidence to support a reasonable jury finding that the Letter was not the product of meaningful attorney involvement, PHS's motion for summary judgment will be granted as to McLaughlin's section 1692e(3) claim.

### D. The Invoices

Although the court will now enter judgment in PHS's favor as to the only claim that remained viable, we must address the possible resurrection of McLaughlin's section 1692e(2)(A) claim. We dismissed McLaughlin's section 1692e(2)(A) claim along with several of his other FDCPA claims pursuant to orders dated September 9, 2011 and December 20, 2011. [Doc Nos. 53 and 72.]

However, PHS has now produced the Invoices, which could demonstrate that PHS misstated the "character, amount, or legal status" of McLaughlin's debt in the Letter. Accordingly, we are affording McLaughlin an opportunity to seek relief from our prior judgments dismissing his section 1692e(2)(A) claim.

As previously summarized, the Invoices demonstrate a discrepancy between the amounts PHS charged CitiMortgage for its

18

work performed on McLaughlin's file and the amount of costs and attorney's fees reflected in the Letter. For instance, the Letter lists $550.00 for costs of suit and title search, while the June 8, 2010 invoice identifies $440.00 in total costs through June 7, 2010. The Letter also lists attorney's fees in the amount of $650.00, while the June 8, 2010 invoice identifies only $625.00 in foreclosure fees. If, in fact, these Invoices demonstrate that PHS was demanding from McLaughlin different fees and costs than were actually billed to CitiMortgage, McLaughlin may have a viable section 1692e(2)(A) claim.

Accordingly, McLaughlin will have 30 days to file a motion seeking relief from the September 9, 2011 and December 20, 2011 judgments based on the newly discovered evidence.

V. CONCLUSION

For the foregoing reasons, PHS's motion for summary judgment on McLaughlin's claim under section 1692e(3) will be granted. McLaughlin will have 30 days to file a motion for relief from our September 9, 2011 and December 20, 2011 orders. An appropriate order follows.

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| TIMOTHY MCLAUGHLIN,                       ) | |
|       Plaintiff,                      ) | |
|         v.                                       ) | Civil Action No. 10-1406 |
| PHELAN HALLINAN & SCHMIEG, LLP, ) | |
| LAWRENCE T. PHELAN, FRANCIS S. ) | |
| HALLINAN, DANIEL G. SCHMIEG       ) | |
| AND ROSEMARIE DIAMOND,             ) | |
|       Defendants.                    ) | |

## ORDER

AND NOW, this 7th day of September, 2012, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 73] is GRANTED. However, the court will refrain from entering final judgment pursuant to Federal Rule of Civil Procedure 58.

IT IS FURTHER ORDERED that plaintiff shall have thirty (30) days from the date of this order to file a motion for relief from the September 9, 2011 [Doc. No. 53] and December 20, 2011 [Doc. No. 72] orders. If no motion is filed within that time period, the court will enter final judgment.

BY THE COURT,

/s/ [signature], C.J.

cc: All Counsel of Record