IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MCLAUGHLIN on behalf of himself and others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>PHELAN HALLINAN & SCHIMEG, LLP., LAWRENCE T. PHELAN, FRANCIS S. HALLINAN, AND ROSEMARIE DIAMOND,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 10-1406<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM

Gary L. Lancaster,                                                  March 11, 2013
Chief Judge.

      This is an action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. ("section 1692"). Before the court is plaintiff Timothy McLaughlin's motion for reconsideration of the court's April 15, 2011 and December 20, 2011 orders dismissing all but McLaughlin's claim under section 1692e(3) of the FDCPA. For the reasons set forth below, the motion will be denied. However, the court imposes discovery sanctions consisting of reasonable expenses, including attorneys' fees, incurred by McLaughlin in connection with this motion for reconsideration against defendants Phelan Hallinan & Schmieg, LLP, Lawrence T. Phelan, Francis S. Hallinan, Daniel G. Schmieg, and Rosemarie Diamond (collectively, "PHS") for violating its discovery obligations and this court's order of December 19, 2011.

I.  PROCEDURAL HISTORY

McLaughlin filed his initial complaint on October 22, 2010 [doc. no. 1]. On November 19, 2010, PHS filed a motion to dismiss [doc. no. 11]. The court granted the motion and dismissed the complaint in its entirety without prejudice on April 17, 2011 [doc. no. 36]. McLaughlin filed an amended complaint on April 29, 2011 asserting claims under sections 1692e(2), 1692f(1), 1692e(3), and 1692e(10) of the FDCPA [doc. no. 38]. PHS filed a second motion to dismiss on May 19, 2011 [doc. no. 39]. On September 9, 2011, the court dismissed each of McLaughlin's claims except the 1693e(3) claim [doc. no. 53]. At the post-discovery status conference, McLaughlin requested clarification as to the effect of this court's order. In a memorandum order dated December 20, 2011 [doc. no. 72], the court explained that, consistent with its prior opinions, McLaughlin could not pursue a section 1692e(2) or 1692e(10) claim because he did not challenge the validity of the debt prior to filing suit and because a debt collector is allowed to estimate attorneys' fees. The order did not specifically address McLaughlin's section 1692f(1) claim, but did explicitly state that "the matter proceeds with respect to McLaughlin's section 1692e(3) claim only" [doc. no. 72 at 3].

On February 14, 2012, PHS filed a motion for summary judgment [doc. no. 73] as to the remaining claim that PHS falsely represented that the June 7, 2010 debt collection letter to

McLaughlin (the "Letter") was the product of meaningful attorney involvement in violation of section 1692e(3) of the FDCPA. The court granted PHS's motion because McLaughlin failed to adduce sufficient evidence to support his allegation that attorneys had not reviewed the Letter [doc. no. 94 at 2]. The court found, however, that PHS submitted invoices during summary judgment briefing (the "Invoices"), which had been withheld during discovery, that could support a reasonable jury finding that PHS misstated the amount of the debt in the Letter in violation of section 1692e(2). Because we previously dismissed McLaughlin's claim under section 1692e(2), we provided McLaughlin 30 days to file a motion for relief from our prior orders. McLaughlin filed this motion for reconsideration on October 5, 2012 [doc. no. 95].

II.  FACTUAL BACKGROUND

Because we write solely for the parties, who are familiar with the facts, we need not reiterate them here. Other readers are referred to our prior opinions [doc. nos. 36, 53, and 72].

III.  LEGAL AUTHORITY

A.  Standard of Review

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café ex rel. Lou-Ann, Inc. v.

Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). Accordingly, a court may alter or amend its judgment if the movant demonstrates at least one of the following: (1) a change in the controlling law; (2) availability of new evidence, which was not previously available; or (3) a need to correct a clear error of law or fact or to prevent manifest injustice. See id. "Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has previously decided." Williams v. City of Pittsburgh, 32 F.Supp.2d 236, 238 (W.D. Pa. 1996).

  B. Fair Debt Collection Practices Act

  Congress enacted the FDCPA in 1977 based on "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The FDCPA aims "not only to eliminate abusive practices by debt collectors, but 'to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Brown v. Card Service Center, 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692e). Congress gave consumers a private cause of action against debt collectors who violate the FDCPA because it considered existing consumer protections insufficient. Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 996-97 (3d Cir. 2011). The FDCPA is to be

construed broadly to achieve its remedial purpose. Id. at 997. To ensure that all consumers are protected, courts are to "analyze communications from lenders to debtors from the perspective of the least sophisticated debtor." Id. (internal quotation omitted).

Section 1692e of the FDCPA generally prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The sixteen subsections of section 1692e set forth a non-exhaustive list of specific practices that fall within this ban. These subsections include:

> (2) The false representation of —
>> (A) the character, amount, or legal status of any debt; or
>> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

15 U.S.C. § 1692e. See also Lesher v. Law Offices Of Mitchell N. Kay, PC, 650 F.3d 993, 997 (3d Cir. 2011). When addressing claims under § 1692e, the question is whether the allegedly deceptive communication "can be reasonably read [by the least sophisticated

debtor] to have two different meanings, one of which is inaccurate." Rosenau v. Unifund Corp., 539 F.3d 218, 222 (3d Cir. 2008) (citation omitted).

IV.     DISCUSSION

    A.     Section 1692e(2) Claim

McLaughlin asks the court to reconsider its prior dismissal of his section 1692e(2) claim[1] because, when the court dismissed that claim, it did not have access to the Invoices. According to McLaughlin, the Invoices reflect a discrepancy between the amounts PHS charged CitiMortgage, Inc. ("CitiMortgage") for its work on McLaughlin's file and the amount of costs and attorneys' fees PHS sought to recover from McLaughlin in the Letter. For instance, the Letter lists $550.00 for costs of suit and title search as of May 18, 2010. However, according to the June 8, 2010 invoice, PHS charged CitiMortgage only $440.00 in total costs through June 7, 2010. The Letter also lists attorneys' fees in the amount of $650.00 as of May 18, 2010. Yet as of the June 8, 2010 invoice, the amount of "foreclosure fees" was only $625.00.[2]

---

[1] Although McLaughlin did not ask that we revive his section 1692e(10) claim, a claim under this section could arguably be valid for the same reasons McLaughlin asserts support revival of his section 1692e(2) claim. Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." However, because the court's analysis of a possible revival of McLaughlin's section 1692e(10) would be the same as that for his section 1692e(2) claim, the court will not address section 1692e(10) separately.

[2] Based on PHS's brief, we find that "foreclosure fees" and "attorney's fees" refer to the same fees [doc. no. 101 at pp. 11-12].

According to McLaughlin, the availability of this new evidence justifies reconsideration of the court's prior orders. Specifically, McLaughlin claims that this new evidence reveals that PHS "misrepresented the actual amount of attorney's fees that were ultimately incurred," "inflate[d] the amount of the costs," and "mischaracterized the nature of the costs" [doc. no. 96 at 5-6]. The court disagrees. Even assuming that McLaughlin's failure to dispute the Letter is not fatal to his claim,[3] his section 1692e(2) claim still fails because the attorneys' fees and costs stated in the Letter were estimates of amounts that PHS actually incurred and that PHS was entitled to collect. Thus, the Letter's statement of attorneys' fees and costs did not deceive or mislead McLaughlin in any way.

The court previously held that estimating the amount of attorneys' fees in an itemized debt collection notice does not violate the FDCPA [doc. no. 72 at p. 3 (citing Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565-66 (7th Cir. 2004))]. However, a debt collector may not charge additional unauthorized collection fees. In fact, some courts have held that listing fees in a debt

---

[3] As the court previously recognized, numerous courts have held that a plaintiff who does not follow the statutory debt validation procedure may not assert an FDCPA claim based solely on an allegation that the debt collector has attempted to collect an invalid debt [see doc. nos. 36 at 8, 72 at 2]. See, e.g., Lorandeau v. Capital Collection Serv., CIV.A. 10-3807, 2011 WL 4018248 (E.D. Pa. Sept. 8, 2011); Bleich v. Revenue Maximization Group, Inc., 233 F.Supp.2d 496, 501 (E.D.N.Y. 2002); Koller v. West Bay Acquisitions, LLC, Civ. A. No. C-12-00117, 2012 WL 1189481, at *3 (N.D. Cal. Apr. 9, 2012). Here, however, McLaughlin does not dispute the underlying debt, but rather PHS's practice of charging fees and costs that had not yet been incurred.

7

collection letter, where no such amounts have been incurred, violates the FDCPA. See Lorandeau v. Capital Collection Serv., No. 10-cv-3807, 2011 WL 4018248 (E.D. Pa. Sept. 8, 2011) (citing Seeger v. AFNI, Inc., 548 F.3d 1107, 1113 (7th Cir. 2008)). See also, Veach v. Sheeks, 316 F.3d 690, 693 (7th Cir. 2003); Pettway v. Harmon, No. 03-CV-10932, 2005 WL 2365331 (D. Mass. Sept. 27, 2005). None of these authorities is binding on this court. Ultimately, where a debtor is not actually misled or deceived by the representations of a debt collector, no violation of the FDCPA occurs. See Duraney v. Washington Mut. Bank F.A., No. 07-cv-13, 2008 WL 4204821 (W.D. Pa. Sept. 11, 2008), aff'd sub nom., Duraney v. F.D.I.C., 388 F. App'x 102 (3d Cir. 2010) (citing Singer v. Pierce & Assocs., P.C., 383 F.3d 596, 598 (7th Cir. 2004)).

Here, McLaughlin argues that PHS violated section 1692e(2) of the FDCPA because the attorneys' fees and costs stated in the Letter do not match the attorneys' fees and costs stated in contemporaneous invoices. According to PHS, the attorneys' fees and costs were legally permissible estimates. Specifically, PHS argues that its inclusion of attorneys' fees in the amount of $650.00 in the Letter constituted a good faith pro rata estimate of one-half of the attorneys' fees that PHS would be ultimately entitled to receive. PHS contends that, because McLaughlin's mortgage was owned by Fannie Mae, it based its estimate on Fannie Mae's authorized attorneys' fees of $1,300.00, which are published

and a matter of public record. PHS's brief does not address the $110.00 discrepancy between the costs of suit and title search listed in the Letter and Invoices. However, the "foreclosure costs" listed in the Invoice dated June 8, 2010 include a title report in the amount of $325.00 incurred on May 19, 2010, a due diligence inquiry as to McLaughlin's whereabouts in the amount of $25.00 also incurred on May 19, 2010, a Freedom of Information Act letter in the amount of $15.00 incurred on May 19, 2010, and a fee for service of the complaint for $75.00 incurred on June 7, 2010. The Invoice dated August 26, 2010 adds an additional $200.00 in costs for filing an amended complaint. The Invoice dated March 7, 2011 lists an additional $150.50 for filing the complaint on June 7, 2010, and a $5.00 Soldiers and Sailors Civil Relief Act Search fee. Thus, based on the record, the amount in "costs of suit and title search" that McLaughlin actually owes is $795.50, which is more than the $550.00 stated in the Letter.

From our independent review of the Letter and Invoices, the court finds that the amounts listed in the Letter, although based on estimates at the time it was sent, were not actually false, deceptive, or misleading and, thus, do not violate section 1692e(2) of the FDCPA. McLaughlin owed at least $550.00 in costs and $650.00 in attorneys' fees as a result of PHS's debt collection efforts. The FDCPA requires debt collectors to communicate information about the amount of the debt in a fair and clear

9

manner. Here, the court finds that PHS properly itemized the amount of attorneys' fees and costs in the Letter and based those amounts on reasonable estimates. We have already held that estimates are proper, especially in a situation where the attorney is charging a flat fee for its services. Indeed, some courts have held that failing to itemize the various charges that comprise the total amount of debt could be construed as falsely stating the amount of the debt. See, e.g., Duraney, 2008 WL 4204821 at *17 (citing Fields, 383 F.3d at 565).

Moreover, the costs and fees listed in the Letter were authorized by contract. According to the mortgage agreement between McLaughlin and CitiMortgage, McLaughlin agreed to reimburse CitiMortgage, in the event a default was not cured, for "all expenses incurred in pursuing the remedies provided in [the agreement], including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law" [doc. no. 11-3 at p. 28 § 22]. Based on this language, there is no question that McLaughlin is obligated to pay attorneys' fees and title costs, as well as other expenses incurred in pursuing the foreclosure action.

Even applying the least sophisticated debtor standard, McLaughlin cannot maintain that the Letter was deceptive. Here, the Letter clearly itemized the amounts comprising the overall debt and did not mislead McLaughlin into believing he would have to pay

amounts that were not owed and could not be collected. Therefore, McLaughlin cannot maintain a claim under section 1692e(2) of the FDCPA arising out of the Letter.

B.  Discovery Sanctions

Although the court finds that McLaughlin cannot maintain a section 1692e(2) claim, we also recognize that PHS's failure to produce the Invoices during discovery violated its discovery obligations as well as this court's December 19, 2011 order directing PHS to produce these very documents [doc. no. 70].

Federal Rule of Civil Procedure 37(b)(2)(A) provides that "[i]f a party [. . .] fails to obey an order to provide or permit discovery [. . .], the court where the action is pending may issue further just orders." Such orders may include, inter alia, striking of pleadings, rendering default judgment against the disobedient party, or dismissing the action. FED. R. CIV. P. 37(b)(2)(A)(i)-(vii). Pursuant to Rule 37(b)(2)(C), "[i]nstead of or in addition to the orders above, the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C) (emphasis added). According to the Court of Appeals for the Third Circuit, the decision to impose sanctions for discovery violations, as well as any determination as to what

11

sanctions are appropriate, are matters generally entrusted to the discretion of the district court. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007).

On December 19, 2011, the court issued an order directing PHS to produce documents in response to Plaintiff's First Request for Production of Documents #5 [doc. no. 66-5 at 10], which requested "[a]ll invoices for professional services rendered by [PHS] in relation to the loan of Timothy McLaughlin." Despite this directive, PHS did not produce the Invoices in discovery. In an affidavit attached to PHS's reply in support of its motion for summary judgment, PHS states that "[a]t no time, was it understood that the information being requested related to the attorneys [sic] fees assessed by the law firm to its client, CitiMortgage" [doc. no. 80-1 at ¶ 9]. This argument is untenable. Moreover, the Invoices themselves reflect charges other than attorneys' fees, making the statement factually incorrect on its face. The scope of McLaughlin's First Request for Production of Documents #5 clearly contemplates the Invoices, thus making PHS explanation for failing to produce these documents implausible.

We find that PHS's actions are sanctionable under Federal Rule of Civil Procedure 37(b)(2)(A). As such, we may issue appropriate "just orders" and *must* order PHS to pay the reasonable expenses incurred by McLaughlin resulting from PHS's failure to comply. As the result of PHS's withholding of discovery documents,

all parties were denied the ability to fully investigate the facts of this case in a timely manner. This, in turn, resulted in the need for additional briefing. Thus, all costs subsequently incurred by McLaughlin in connection with this motion for reconsideration are the direct result of PHS's failure to produce the Invoices during discovery. As such, an award of attorneys' fees is proper and no circumstances exist that would make such an award unjust. Had PHS produced the Invoices during discovery as required, McLaughlin would have had the opportunity to address them during summary judgment briefing. Instead, the Invoices were attached to PHS's summary judgment reply brief, well after discovery had closed. Accordingly, PHS's actions, whether intentional or merely negligent, warrant the imposition of costs against PHS, including attorneys' fees, of all expenses incurred by McLaughlin in connection with his motion for reconsideration.

V.     CONCLUSION

For the foregoing reasons, we deny the motion for reconsideration. However, PHS is ordered to reimburse McLaughlin for all reasonable expenses, including attorneys' fees, incurred in connection with McLaughlin's motion for reconsideration, brief in support, and reply brief. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY MCLAUGHLIN on behalf of )
himself and others similarly )
situated, )
 )
            Plaintiff, )
 )
     v. ) Civil Action No. 10-1406
 )
PHELAN HALLINAN & SCHIMEG, LLP., )
LAWRENCE T. PHELAN, FRANCIS S. )
HALLINAN, AND ROSEMARIE DIAMOND, )
 )
           Defendants. )

ORDER

AND NOW, this ___ day of March, 2013, upon consideration of plaintiff's motion for reconsideration [doc. no. 95], and defendants' response thereto, IT IS HEREBY ORDERED THAT plaintiff's motion is DENIED. A separate order entering final judgment pursuant to Federal Rule 58, as referenced in this court's order of September 7, 2012, will now be issued.

IT IS FURTHER ORDERED that, as a sanction for failing to fulfill their discovery obligations, and to obey this court's order of December 19, 2011, defendants must reimburse plaintiff for all reasonable expenses, including attorneys' fees, caused by their failure to comply. Counsel for plaintiff is to submit a bill of costs for all reasonable fees incurred in connection with the preparation of the motion for reconsideration, brief in support,

and reply brief within 14 days from the date of this order.

BY THE COURT:

_____, C. J.

cc:      All Counsel of Record